Charles E. Hansberry
Jenny M. Jourdonnais
HANSBERRY & JOURDONNAIS PLLC
2315 McDonald Ave., Suite 210
Missoula, MT 59801
Telephone: 406.203.1730
Facsimile: 406.205.3170
Chuck@HJBusinessLaw.com
State Bar I.D. 4132
Jenny@HJBusinessLaw.com
State Bar I.D. 11906
-and-

Sheila R. Schwager (ISB #5059)
HAWLEY TROXELL ENNIS & HAWLEY LLP
877 Main Street, Suite 1000
P.O. Box 1617
Boise, ID 83701-1617
Telephone: 208.344.6000
Facsimile: 208-954-5209
Email: sschwager@hawleytroxell.com
*Pro Hac Vice*

Attorneys for Defendant First Interstate Bank

UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF MONTANA

| | |
|---|---|
| In re<br><br>SHOOT THE MOON, LLC,<br><br>          Debtor.<br>_____<br>JEREMIAH FOSTER, as trustee of the STM Liquidating Trust, successor and assignee to the claim of Jeremiah Foster, as trustee for the Chapter 11 Estate of SHOOT THE MOON, LLC,<br><br>          Plaintiff, | Case No. 15-60979-11<br><br><br>Case No. Adv. No. 21-02005<br><br>**FIRST INTERSTATE BANK'S REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS THIRD AMENDED COMPLAINT** |

vs.

FIRST INTERSTATE BANK, a Montana
banking corporation, and PRAIRIE
MOUNTAIN BANK, a Montana banking
corporation,

       Defendants.

# TABLE OF CONTENTS

I.      INTRODUCTION ........................................................................................ 1

II.     THE FINAL SETTLEMENT AND SALE ORDER PRECLUDES THE
        COLLATERAL ATTACK ON THE RELEASE, AS A MATTER OF
        LAW. .................................................................................................... 1

        A.      The Release Is Integral to the Settlement and Sale Order;
                Precluding the Trustee's Collateral Attack. ...................................... 2

        B.      The Finality Rule Is Not Limited for the Protection of Purchasers
                or Title. .......................................................................................... 6

III.    THE FACTS AS ALLEGED IN THE THIRD COMPLAINT DO NOT
        REMEDY THE FATAL DEFICIENCIES FOUND BY THIS COURT,
        WARRANTING DISMISSAL. ................................................................ 10

        A.      The Trustee Ignores The Strong Policy of Settlement Agreements
                in Bankruptcy. ............................................................................... 11

        B.      The Trustee Has Failed To Set Forth A Claim for Fraud As a
                Matter of Law. ................................................................................ 12

                1.      No Duty to Disclose Exists, Negating Constructive Fraud. .............. 13

                2.      No Direct Inquiry Was Made By the Trustee to FIB,
                        Negating Fraud. ................................................................... 17

                3.      No Timely Due Diligence Has Been Alleged Negating
                        Fraudulent Concealment. ..................................................... 19

                4.      No Affirmative Conduct Has Been Alleged Negating
                        Fraudulent Concealment. ..................................................... 21

IV.     THE CLAIM OF UNILATERAL MISTAKE FAILS UNDER
        MONTANA LAW. .................................................................................. 21

V.      THE TRUSTEE FAILS TO STATE A CLAIM AS A MATTER OF
        LAW. ..................................................................................................... 24

        A.      The Trustee Has Failed To Allege Sufficient Facts Warranting
                Tolling. .......................................................................................... 24

        B.      The Doctrine Of *Pari Delicto* Precludes The Tort Claims. ................. 25

44833.0171.14850109.2

C.     The Trustee Cannot Establish A Duty, Which is Fatal to the Tort Claims. ........................................................................................... 26

D.     No Claim Exists For Unjust Enrichment Or Conversion As A Matter Of Law. ..................................................................................... 26

VI.     CONCLUSION ....................................................................................... 27

44833.0171.14850109.2

# TABLE OF AUTHORITIES

**Cases**

*Akhoian Enters. First-Citizens Bank & Trust Co.,*
   630 B.R. 329 (C.D. Cal 2021) ............................................................... 16

*Ashcroft v. Iqbal,*
   556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) ......................... 17

*Bankr. Services, Inc. v. Ernst & Young (In re CBI Holding Co.,)*
   247 B.R. 341 ............................................................................................ 25

*Barnett Bank of West Florida v. Hooper,*
   498 So.2d 923 (Fla. 1987) ....................................................................... 16

*Benson v. Diverse Computer Corp.,*
   89 P.3d 981 (Mont. 2004) ........................................................................ 23

*Brown Media Corp. v. K&L Gates, LLP,*
   854 F.3d 150 (2nd Cir. 2017) ..................................................................... 8

*Busta v. Columbus Hosp.,*
   916 P.2d 122 ............................................................................................ 26

*Christian v. Atlantic Richfield Co.,*
   358 P.3d 131 (Mont. 2015) ...................................................................... 21

*Cohen v. Subaru of Am., Inc.,*
   2022 WL 721307 (D.N.J. 2022) ............................................................... 14

*Contrarian Funds LLC v. Aretex LLC (In re WestPoint Stevens, Inc.),*
   600 F.3d 231, 250 (2nd Cir. 2008) ............................................................. 4

*De Wit v. Firestar Corp.,*
   879 F. Supp. 947 (N.D. Iowa 1995) ......................................................... 18

*Deist v. Wachholz,*
   678 P.2d 188 (Mont. 1984) ...................................................................... 15

*Facebook Inc., v. Pacific Northwest Software, Inc.,*
   640 F.3d 1034 (9th Cir. 2011) ........................................................... 13, 15

*Fortune Natural Res. Corp. v. ATP Oil & Gas Corp.,*
   2015 WL 729912, *3 (S.D. Tx. 2015) ........................................................ 3

44833.0171.14850109.2

*Fulmer v. Fifth Third Equip. Fin. Co.*, (*In re Veg Liquidation, Inc.*),
931 F.3d 730 (8ᵗʰ Cir. 2019) ........................................................................ 4, 7

*Fulmer v. Fifth Third Equip. Fin. Co.*, (*In re Veg Liquidation, Inc.*,)
572 B.R. 725 (Bankr. W.D. Ark. 2017)............................................................ 7

*GAH Holdings, LLLC v. Rinaldi (In re Farmland Indus., Inc.)*,
408 B.R. 497 (8ᵗʰ Cir. BAP 2009) .................................................................. 6

*Graham-Rogers v. Wells Fargo Bank, N.A.*,
397 Mont. 262 .............................................................................................. 26

*Harper v. Nev. Prop. 1, LLC*,
2021 WL 3418350 (D. Nev. August 5, 2021) .................................................. 8

*H-D Irrigating, Inc. v. Kimble Props., Inc.*,
8 P.3d 95 (Mont. 2000)................................................................................ 21

*Holman v. Hansen*,
773 P.2d 1200 (Mont. 1989)................................................................... 19, 21

*House v. U.S. Bank N.A.*,
481 P.3d 820 (Mont. 2021)........................................................................... 15

*In re Amen*,
2015 WL 25194 (Bankr. D.Mont. 2015) ...................................................... 22

*In re Apex Long Term Acute Care- Katy, L.P.*, 599 B.R.
314 (Bankr.N.D.Tx. 2019)............................................................................. 9

*In re Bailey*,
464 B.R. 61, *8 (6ᵗʰ Cir. BAP 2011) ............................................................ 10

*In re B-Bar Tavern, Inc.*,
506 B.R. 879 (Bankr.D.Mont. 2013) ........................................................... 24

*In re CHC Indus., Inc.*,
389 B.R. 767 (Bankr.M.D.Fla. 2007) ........................................................... 10

*In re F.H. McGraw & Co.*,
473 F.2d 465, 469 (3ʳᵈ Cir. 1973) ................................................................ 23

*In re Farmland Indus., Inc.*,
408 B.R. 497 (8ᵗʰ Cir. 2009) ......................................................................... 7

44833.0171.14850109.2

*In re Gen, Motors LLC Ignition Switch Litig.*,
   257 F. Supp. 3d 372 (S.D.N.Y. 2017) ................................................................................ 18

*In re Lehr Construction, Corp., supra.*,
   528 B.R. at 612 ...................................................................................................... 26

*In re Met-L-Wood Corp.*,
   861 F.2d 1012 (7th Cir. 1988) .................................................................................... 8

*In re Miller Lynch*,
   154 F.3d at 60 ......................................................................................................... 20

*In re Namco Capital Group, Inc.*,
   2011 WL 2312090, *1, (C.D.Cal. 2011) ................................................................. 3

*In re Nine West Shoes Antitrust Litig.*,
   80 F.Supp.2d 181 (S.D.N.Y. 2000) ................................................................... 19, 20

*In re Polycel Liquidation, Inc.*,
   2006 WL 4452982 (Bankr. D.N.J. 2006) ................................................................ 6

*In re Vitamins Antitrust Litig.*,
   2000 WL 1475705, *1,*4 (D.C.Cir. 2000) ........................................................ 19, 20

*In re Waypoint Leasing Holdings. Ltd.*,
   607 B.R. 143, (Bankr. S.D.N.Y. 2019) ................................................................. 17

*In re Yellow Cab Coop.*,
   602 B.R. at 365 ...................................................................................................... 26

*In re ZF-TRW Airbag Control Units Prod. Liab. Litig.*,
   2022 WL 522484, *124 (C.D. Cal. February 9, 2022) ........................................... 19

*Johnson v. American Ins. Co.*,
   2008 WL 11349939, at *3 (D.Mont. 2008) ............................................................ 22

*Lachenmaier v. First Bank Sys., Inc.*,
   803 P.2d 614 (Mont. 1990) ..................................................................................... 15

*Lambert v. Firstar Bank, N.A.*,
   127 S.W.3d 523 (Ark. App. 2003) ........................................................................... 18

*Lange v. Schropp (In re Brook Valley VII)*,
   496 F.3d 892 (8th Cir. 2007) ................................................................................ 6, 7

44833.0171.14850109.2

*Lynch v. Vaccaro,*
566 B.R. 290 (E.D.N.Y. 2017) ................................................................. 9

*Mattingly v. First Bank,*
947 P.2d 66 (Mont. 1997) ......................................................................... 15

*Miller v. Meinhard-Commercial Corp.,*
462 F.2d 358 (5th Cir. 1972) .................................................................... 10

*Morrow v. Bank of America, N.A.,*
324 P.3d 1167 (Mont. 2014) ..................................................................... 15

*New Indus. v. Byman (Matter of Sneed Shipbuilding, Inc.),*
916 F.3d 405 (5th Cir. 2019) .................................................................. 3, 5

*Official Comm. of Unsecured Creditors v. Trism, Inc., (In re Trism, Inc.,),*
328 F.3d 1003 (8th Cir. 2003) .................................................................... 2

*Payne v. Hall,*
458 P.3d 1001 (Mont. 2020) ..................................................................... 24

*R.F. Lafferty, supra.,*
267 F.3d at 359 ......................................................................................... 26

*Regions Bank v. J.R. Oil Co., LLC,*
387 F.3d 721 (8th Cir. 2004) ...................................................................... 7

*Rich v. Ellingson,*
174 P.3d 491 (Mont. 2007) ....................................................................... 23

*Richfeld Bank & Trust Co., v. Sjogren,*
244 N.W.2d 648 (Minn. 1976) ............................................................ 15, 16

*Shutter Shop, Inc. v. Amersham Corp.,*
114 F. Supp. 2d 1218, (M.D. Ala. 2000) ................................................. 18

*Solheim v. Earl E. Foss Trucking, Inc.,*
2005 WL 4708181, * (D.Mt. 2005) .......................................................... 22

*Sugarman v. Taylor (In re Yellow Cap Coop., Inc.,),*
602 B.R. 357 ............................................................................................. 25

*Sullivan v. Marsh,*
225 P.2d 868, (Mont. 1950) ..................................................................... 22

44833.0171.14850109.2

*Wag Hotels, Inc. v. Wag Labs, Inc.,*
  2022 WL 1212012, *6-7 (N.D.Cal. 2022) ........................................................ 24

*Williams v. DeVinney,*
  856 P.2d 546, (Mt. 1993) ................................................................................ 19

*Yellowstone Conference of United Methodist Church v. D.A. Davidson, Inc.,*
  741 P.2d 794, (Mont. 1987) ............................................................................ 19

*Zenith Radio Corp. v. Hazeltine Research, Inc.,*
  491 U.S. 321 (1971) ........................................................................................ 23

**Statutes**

11 U.S.C. §363 ......................................................................................... passim

11 U.S.C. §363(b) ...................................................................................... 8, 13

11 U.S.C. §363(m) ...................................................................................... 7, 11

**Rules**

Federal Bankruptcy Rule 9016 .......................................................................... 19

Federal Bankruptcy Rule 9019(a) ...................................................................... 13

Rule 12(b)(6) .................................................................................................. 1, 28

44833.0171.14850109.2

# I.
## INTRODUCTION

First Interstate Bank ("FIB") submits this Reply Memorandum in Support of its Motion to Dismiss the Trustee's Third Amended Complaint ("**Complaint**"). The law is clear that the Trustee is precluded from collaterally attacking the final non-appealed judgment, which is fatal to the entirety of the Complaint. Further, FIB respectfully submits that the Trustee has failed to remedy the fatal defects resulting in dismissal of his Second Amended Complaint. Thus, for the same reasons set forth in this Court's January 18, 2022 decision, all causes of action in the Complaint were released by the Trustee in 2016, negating this action. Further, the claims are time barred and the Complaint fails to state a claim upon which relief may be granted. The Complaint should therefore be dismissed with prejudice pursuant to Rule 12(b)(6). Indeed, the Trustee has not requested the Court grant him leave to amend, if FIB's Motion to Dismiss is granted.

# II.
## THE FINAL SETTLEMENT AND SALE ORDER PRECLUDES THE COLLATERAL ATTACK ON THE RELEASE, AS A MATTER OF LAW.

Faced with clear established law that bankruptcy sale orders entered under 11 U.S.C. §363, are final judgments, and if not appealed, the "*sole route for seeking relief*" from such orders is Rule 60, the Trustee argues he is entitled to collaterally attack a §363 final judgment because he contends (1) the Release was not integral to the Settlement and Sale Order; (2) "he is not challenging the validity of the sale;" and (3) the prohibition of collaterally attacking a sale order is only for the benefit of a purchaser, no other party. The undisputed facts and law are to the contrary. Notably ignored by the Trustee is the admitted fact that the sale of the assets that are the subject of the Settlement and Sale Order would not have taken place, *but for* the Trustee's agreement to the Release of all secured creditors' known and unknown claims, which included FIB and PMB. *See* Dkts.84, 29, Ex.A, 52:19-53:32; 56:6-18. Further, in the Trustee's Opposition, he expressly acknowledges, "*the Release was central to the parties' Settlement Agreement.*" Dkt.89, p.27.

## A. The Release Is Integral to the Settlement and Sale Order; Precluding the Trustee's Collateral Attack.

With no case authority cited on point, the Trustee argues he is not prohibited from collaterally attacking the Settlement and Sale Order because the "Trustee's claims against FIB and PMB have nothing do with the sale." Dkt.89, p.47. The Trustee is wrong. The Trustee's asserted claims against FIB are purported claims that were "unknown" released claims, which admittedly enabled the Trustee to get the Settlement and Sale Order entered. The issue is whether the Trustee can negotiate and agree to a broad release of unknown claims to induce parties to consent to a settlement and §363 sale, advocate and seek a final order approving that agreement, receive the benefits of the sale order, and then over five years later, collaterally attack the creditor's ability to enforce the final, non-appealed sale order's release. The answer is unequivocally no.

In *Official Comm. of Unsecured Creditors v. Trism, Inc., (In re Trism, Inc.,)*, 328 F.3d 1003 (8ᵗʰ Cir. 2003), the debtor entered into an Asset Purchase Agreement, *conditioned upon* the bankruptcy court issuing an order absolving a secured creditor Garrett and the buyer Bed Rock from any avoidance liability. *Id.* at 1005. At the hearing to approve the §363 sale, the bankruptcy court realized it could not absolve Garrett's avoidance liability without also releasing the prior secured creditor, CIT. *Id.* Ultimately, Bed Rock increased its bid by two million dollars and CIT's release was negotiated. *Id.* at 1006. In approving the sale, the court noted (1) Garrett would withdraw its offer if the sale were not approved at that time, and (2) the post-petition financing order terminated at the close of business. *Id.* Thus, the court approved the sale and included in the order a release of Bed Rock, Garrett, and CIT from avoidance liability, finding "the *sale could not be consummated* on terms as favorable to Trism *without protection* to Bed Rock, CIT, and Garrett from such liability." *Id.* After the sale was consummated, the Committee appealed CIT's release. The Circuit court rejected the Committee's attempt holding:

> We conclude a challenge to a *related provision* of an order authorizing a sale of the debtor's assets *affects the validity of the sale* when the related provision is integral to the sale of the estate's assets. A *provision is integral* if the provision

is so closely linked to the agreement governing the sale that *modifying or reversing the provision would adversely alter the parties' bargained-for exchange.*

*Id.,* at 1007 (emphasis supplied).

Similarly, in *New Indus. v. Byman* (*Matter of Sneed Shipbuilding, Inc.*), 916 F.3d 405 (5th Cir. 2019), a buyer was only interested in buying the debtor's assets if the trustee and a creditor resolved their dispute over title to the assets. *Id.* at 407. To get clean title, the trustee could either undertake years of litigation against the creditor, during which the assets would lose value, or settle with the creditor "on unfavorable terms." *Id.* The trustee chose the latter. *Id.* The bankruptcy court approved the settlement and sale in a single order, *finding its provisions "non-severable and mutually dependent." Id.* (emphasis supplied). An unsecured creditor appealed the sale order, arguing that *it was not challenging the sale of the property,* only the settlement with the creditor, so it was not subject to the finality of §363. Affirming dismissal of the appeal, the Fifth Circuit noted that "without that release, [the buyer] likely would have walked away from the deal. As the bankruptcy court noted, there is **no way to sever the settlement from the sale; they are mutually dependent.**" *Id.* at 410 (emphasis supplied).

Further, in *In re Namco Capital Group, Inc.,* 2011 WL 2312090, *1, (C.D.Cal. 2011), when faced with whether the finality of §363 applied when the complaining party was not challenging the validity of transfer of title, but rather the terms of the sale, the court held that the order could not be attacked. The court stated, "a provision *is integral* if the provision is so closely linked to the agreement governing the sale that *modifying or reversing the provision would adversely alter the parties' bargain for exchange." Id.,* at * 3 (emphasis supplied); *e.g. Fortune Natural Resources Corp. v. ATP Oil & Gas Corporation,* 2015 WL 729912, *3 (S.D. Tx. 2015) (emphasis supplied) ("the consummation of the sale was dependent on the creation of the trust. *Without the establishment of the trust, DOI would have **maintained its objection and there would have been no sale**.* Accordingly, the establishment of the trust is *integral to the sale* of ATP's assets;" which

prevented the court from modifying the sale order.); *Contrarian Funds LLC v. Aretex LLC (In re WestPoint Stevens, Inc.)*, 600 F.3d 231, 250 (2nd Cir. 2008) (without the lien release, claim satisfaction and distribution provisions as integral parts, *there simply could not be a sale*, accordingly the sale order could not be modified); *Fulmer v. Fifth Third Equip. Fin. Co., (In re Veg Liquidation, Inc.)*, 931 F.3d 730, 738 (8th Cir. 2019) (emphasis supplied) (integral term when undermining a sale order "*would adversely alter the parties' bargained for exchange*").

It is no surprise that the Trustee is attempting to keep the benefits of the sale, as it was a sale that his counsel argued to the Bankruptcy Court that he was not going to apologize for, "as they got a good deal done." Dkt.29, Ex.A, 51:24-52:25; 54:18-55:3. The Trustee's counsel further argued this "good deal" was accomplished only after a "lot of hard work" over a two day mediation, with subsequent documentation of the deal." *Id.*

In this case there can be no serious dispute that *but for* the Release, no sale would have occurred under the Settlement and Sale Order. The Trustee's counsel advocated the significance of the Release to the Bankruptcy Court in seeking an order approving the Settlement and Sale Motion:

> Your Honor, what we've now been able to accomplish is that we have a stipulation that's been presented that incorporates the secured positions of every secured lender that has a lien on assets that are being sold. We've been able to carve out special arrangements for the Unsecured Creditors' Committee, so that they would get priority treatment, so that they feel that they are getting some compensation in this transaction. *No one's questioning the releases, which are __a condition of the secured lenders to do this transaction.__ Because* – and I'll -- Scott Jenkins said it best, why would we advance new money, write off money, to realize we are right back into looking at this thing again? . . .

> Everyone recognizes the benefit of the transaction: The lessors get brought current. The administrative expenses get paid. *The secured creditors* get what they are willing to take, and *in return for that big concession, we are giving them a __general__ release of claims* that would otherwise be filed against them. *__And they're all quite clear that if they can't get those terms, then the stipulation is not acceptable. And [then] under 363, I can't deliver the consent of all secured creditors.__*

*Id.,* 51:2-14; 52:19-53:2 (emphasis supplied). Indeed, the Trustee's counsel went on to inform the court that *if the sale was not approved then, he would lose the buyer* and the next best deal would not even cover administrative expenses[1]. *Id.* 56:6-18.

Not only did the Trustee's counsel advocate for the Release so that the sale could actually take place under §363, but the Trustee made sure that the Release was *non-severable* and *mutually dependent* of the Settlement and Sale Order, as the trustee did in *Matter of Sneed Shipbuilding, supra.* Significantly, the Settlement and Sale Order expressly states that it is hereby ordered that (1) "the Secured Creditors Stipulation and all of the terms and conditions thereof are hereby approved, with such terms and conditions incorporated into this Order by this reference;". . . (2) the Order is "*binding in all respects*" upon the trustee and successor trustee; (3) nothing contained in any *order of any type or kind entered in* the Chapter 11 case or any related proceeding subsequent to the entry of the Order, is to "*conflict with or derogate from the provisions of . . . the Stipulations, as approved by this Order, or the terms of this Order*". . . and (4) "*all of the provisions of this Order are non-severable and mutually dependent.*" *Id.,*Ex.E, p.27¶4; p.29¶12, p.37¶34; p.38¶35.

The Trustee asks this Court to do what the law prohibits. He asks to be allowed to keep the benefit of the sale, *which he could not have obtained without the Release,* and then disregard the Release and do exactly what he promised he would not do; cause the released party to incur litigation expenses and fees as to released (and meritless) claims. In this case there can be no dispute, based upon the Trustee's counsel's own words, that but for the Release no sale would have occurred under the Settlement and Sale Order; an order that was not appealed. The Trustee's attempt to revoke the Release five years after the Settlement and Sale Order was entered clearly and unequivocally adversely alters FIB's bargained for exchange; which the law does not allow.

---

[1] See Dkts 795, 798; stipulation and order extending deadline for FIB to object or respond to sale through 9/14/16.

**B.     The Finality Rule Is Not Limited for the Protection of Purchasers or Title.**

The Trustee incorrectly attempts to limit the finality of §363 sale orders for the benefit of purchasers and protection of title.  In *GAH Holdings, LLLC v. Rinaldi (In re Farmland Indus., Inc.*), 408 B.R. 497 (8th Cir. BAP 2009), the court affirmed the bankruptcy court's dismissal of an adversary proceeding seeking monetary damages arising from a §363 sale, despite the argument that the plaintiff was not attempting to "undo the sale."  The court explained that §363 "protects more than just title.  A bankruptcy sale under §363 free and clear of all liens is a judgment that is good as against the world, not merely as against parties to the proceedings."  *Id.* at 508.

The Trustee first cites the unpublished decision, *In re Polycel Liquidation, Inc.,* 2006 WL 4452982 (Bankr. D.N.J. 2006), to argue that "the purpose of finality in a 363 sale is to protect the purchaser, and therefore the policy concerns regarding finality are not implicated."  Dkt.89, p.45.  Yet, *In re Polycel,* states that the policy rational behind §363(m) is not only to afford finality to the judgment of the bankruptcy court, but particularly to give finality to those orders and judgments *upon which third parties rely.*"  *Id.* at *9 (emphasis supplied).  Notably, unlike the Trustee in this case, the party in *In re Polycel,* disputing the sale order, correctly and timely filed a Rule 60(b) motion.  Accordingly in *In re Polycel*, no improper collateral attack was at issue.

*Lange v. Schropp (In re Brook Valley VII*), 496 F.3d 892 (8th Cir. 2007), also does not support the Trustee's argument.  The Trustee cites *Brook Valley* to argue that if he is not seeking to unwind the sale of the assets under the §363 Settlement and Sale Order, then Rule 60 is not applicable.  That is not the holding of *Brook Valley*.  In *Brook Valley*, the court entered an order allowing a foreclosure sale to proceed under state law; it was not about a §363 sale.  *Id.*, at 897-99.  Further, that order did not contain any releases of any parties.  *Id.*  The Trustee then brought a lawsuit against the debtor for breach of fiduciary duty, related in part to the sale.  *Id.*  In finding that Rule 60 was not applicable, the court found that the order approving the foreclosure sale was not being affected and to pursue the action, the Trustee relied upon the validity of the foreclosure

sale against those who held fiduciary duties to the Estate. *Id.* at 899. In this case, unlike *Brook Valley*, the Trustee is directly affecting the final §363 order in a manner that is contrary to the final order's express terms. Indeed, he seeks to pursue litigation against parties that were released from such litigation under the express terms of that non-severable, mutually dependent order. *Brook Valley* does not authorize the Trustee's collateral attack upon the final Settlement and Sale Order. *See Fulmer v. Fifth Third Equip. Fin. Co., (In re Veg Liquidation, Inc.,)* 572 B.R. 725, 735 (Bankr. W.D. Ark. 2017) ("the sale of the debtor's assets in an authorized 363(b) sale unlike the foreclosure sale at issue in the *Brook Valley* case, are entitled to heightened protections. . . those heightened protections are found within §363 [finality] and Rule 60 [relief from judgment]. . ."); *In re Farmland Indus., Inc.,* 408 B.R. 497, 508 (8th Cir. 2009) (same); *In re Veg Liquidation*, 931 F.3d 730, 738 (8th Cir. 2019) (*Brook Valley* was not subject to the finality §363 rule because it was against a fiduciary and was an order not subject to §363).

The only other two cases the Trustee cites similarly provide no support. In *Regions Bank v. J.R. Oil Co., LLC,* 387 F.3d 721, 731 (8th Cir. 2004), the creditor filed suit under RICO against debtors and others alleging fraud, conspiracy, and RICO claims relating to §363 sales. *Id.* at 727. Notably, the creditor argued it was not attempting to "undo" the §363 sales. *Id.* at 727. Nevertheless, the court *ruled against* the creditor as a matter of law, finding the claims were barred as impermissible collateral attacks, as they were "*related* to the Jones Realty bankruptcy sale." *Id.* at 731 (emphasis supplied). The court, recognizing that res judicata did not apply to the creditor in one of the bankruptcy sales of which it was not a party, nonetheless held that such principals were not necessary to bar the claims. *Id.* "[T]o the extent that those claims relate to the sale of the collateral," as a bankruptcy sale under §363 "is a judgment that is good as against the world, not merely as against parties to the proceedings." *Id.,* at 731-32. Thus, the action was barred as against all parties, not just the purchasers of the properties at issue.

*Brown Media Corp. v. K&L Gates, LLP*, 854 F.3d 150 (2nd Cir. 2017) also does not support the Trustee's argument. The Trustee cites *Brown Media Corp.* for the proposition that "a lawsuit that poses no threat to the finality of the bankruptcy court's order and not does not seek to overturn a completed sale, does not do violence to the finality principals under §363." Dkt.89, p. 48. In *Brown Media Corp.,* the company created to acquire the debtor's assets sued a law firm for failing to disclose alleged conflicts of interest. *Id.* at 152. In determining that the plaintiff was not barred under *res judicata* from proceeding with the suit, the court found that the plaintiff's allegations were not aimed at the parties subject to the bankruptcy court orders. *Id.* Further, since the allegations did not implicate the parties to the bankruptcy proceedings, the failure to raise their claims against the defendants in bankruptcy court did not "almost certainly affect" the bankruptcy orders. *Id.* at 162. The court held that "dispositive to a finding of preclusive effect, is whether an independent judgment in a separate proceeding would impair or destroy rights or interests established by the judgment entered in the first action." *Id.*

Of course, in this case, the parties to the Settlement and Sale Order are the same. Further, the mere filing of the Complaint impairs FIB's interests under the Sale Order as the essence of the Release is that no suits would be filed against it; Yet, FIB is incurring substantial fees and costs to address what is now the fourth complaint filed against it by the Trustee based on released claims. As set forth in *Harper v. Nev. Prop. 1, LLC*, 2021 WL 3418350 (D. Nev. August 5, 2021):

> ***Holding parties to the terms of executed and valid settlement agreements is critically important***, as is deterring such behavior from the outset. The interests of equity, judicial economy, and finality all militate strongly against efforts to renege on settlement. . . At some point litigation must come to an end. . . enforcing a settlement agreement has at its foundation the policy favoring the amicable adjustment of disputes and the concomitant avoidance of costly and time consuming litigation.

*Id.,* at *7 (emphasis supplied; cites omitted).

The Trustee attempts to distinguish FIB's cited cases, such as *In re Met-L-Wood Corp.*, 861 F.2d 1012 (7th Cir. 1988), arguing those "cases sought to unwind the sales themselves."

Dkt.89, p. 46. Yet, not only has the Trustee failed to cite any case holding that terms in a §363 sale order can be attacked outside of Rule 60, if not appealed, the cases are to the contrary. Indeed, in *In re Met-L-Wood Corp.*, the trustee was not seeking to rescind the sale, but sought damages from several parties, including secured creditors, that benefited from the sale. *Id.* at 1018. If the state of law were that advocated by the Trustee, then the lawsuit would only have been dismissed against the purchaser of the assets who obtained title, not the secured creditors that also benefited from the sale. Instead, the case was dismissed as to all parties because the trustee neither appealed, nor addressed, the sale order under Rule 60. *Id.,* at 1018.

The cases are in accord. As in this case, in *In re Veg Liquidation, Inc..,* the trustee argued the defendants were not entitled to the §363 protections because he was not attempting to attack the sale order. *Supra.,* 583 B.R. at 210. He argued he was instead seeking damages from "strangers" to the sale order. *Id.* The BAP held that the trustee's "semantics are not persuasive" and that his argument was simply not true. *Id.* at 210, 214.

> All of the Defendants were involved in the sale of the Debtor's assets in some way or another. Some were junior lienholders, some were estate professionals, and others were creditors and committee members. The Defendants are far from being strangers to the Sale Order. As such they are entitled to the protections of §363(m), which ***shields third parties who rely on the bankruptcy court's order from endless litigation.***"

*Id.,* at 214 (emphasis supplied). The Eight Circuit affirmed, holding the trustee's arguments that he was not seeking reversion to title or suing parties to the order were not convincing, since a §363 sale is a "judgment that is good as against the world, not merely as against parties to the proceedings." *In re Veg. Liquidation*, 931 F .3d at 737. *See Lynch v. Vaccaro*, 566 B.R. 290, 300 (E.D.N.Y. 2017) (it is the entire sale order that is protected under finality, not just the sale transaction); *In re Apex Long Term Acute Care- Katy, L.P.,* 599 B.R. 314 (Bankr.N.D.Tx. 2019) ("even where an action has an independent purpose and contemplates some other relief, it is a collateral attack if it must *in some fashion* overrule a previous judgment."); *In re Bailey*, 464 B.R.

61, *8 (6th Cir. BAP 2011), citing *Miller v. Meinhard-Commercial Corp.,* 462 F.2d 358, 360 (5th Cir. 1972) (action challenging integrity of court's judgment is impermissible collateral attack; an action is a collateral attack if a court *must in some fashion* overrule a previous judgment); *In re CHC Indus., Inc.,* 389 B.R. 767 (Bankr.M.D.Fla. 2007) ("a party may not challenge a Sale Order, however, by seeking damages based on allegations that clearly conflict with the Court's prior findings regarding the transaction").

In this case, the Trustee submitted an order to the Bankruptcy Court, which was entered on *September 26, 2016,* expressly holding that the Settlement and Sale Order was a *final* order, entered under §363, in good faith, for fair value, and was in the best interests of the Estate and creditors. Dkt. 29, Ex. E, pp.6, 8, 22-23. Further, the order submitted by the Trustee expressly stated that no order could be entered that would derogate from the provisions of the Stipulations, which included the Release, and further provided that all of the Order's provisions were mutually dependent and non-severable. *Id.,* p. 37, ¶ 34; p.38, ¶35. Yet, through this action, the Trustee now attempts to derogate and sever the general Release embodied in the Stipulation, exactly what the very Order he submitted states he cannot do. He is attempting to reject and sever the agreed upon general release of all known and unknown claims, to now bring (meritless) claims against FIB *in 2022,* that beyond refute are covered by the Release. This pending action is a blatant collateral attack on the Honorable Ralph B. Kirsher's Settlement and Sale Order, which is barred.

### III.
### THE FACTS AS ALLEGED IN THE THIRD COMPLAINT DO NOT REMEDY THE FATAL DEFICIENCIES FOUND BY THIS COURT, WARRANTING DISMISSAL.

Although the Complaint fails in its entirety due to the failure to timely appeal or file a Rule 60(b) motion, and this case should stop there; the facts alleged in the Complaint are also fatally deficient to avoid the court approved Release.

### A. The Trustee Ignores The Strong Policy of Settlement Agreements in Bankruptcy.

The Trustee gives lip service to the strong public policy favoring settlement agreements. He "readily acknowledges the important policies that favor giving effect to agreements that put an end to the expensive and disruptive process of litigation," but proceeds to ignore that policy in causing FIB to litigate (meritless) claims he waived over five years ago. Dkt.89, p.13,25. The Trustee takes that approach despite this Court's holding:

> Settlement is particularly valuable in bankruptcy. Approximately 147 years ago, the Supreme Court emphasized the utility of "speedy sales, reasonable compromises, and efforts to adjust differences" as tools to promptly administer bankruptcy estates. The Court has reiterated this same point many times over the decades. . . The flexibility inherent in Rule 9019(a) and its statutory counterpart section 363(b) has facilitated significant creativity in the negotiation and crafting of complex, multiparty settlements resolving what might otherwise be intractable disputes in non-bankruptcy contexts. This process has preserved or created value for hundreds of thousands of bankruptcy estates. A key and common component of many such settlements is a claim release like the one the parties forged here. These releases further the goals of finality and certainty by providing a mechanism to achieve "global peace" among competing parties. . . *Given the speed associated with bankruptcy transactions and the crucible of uncertainty in which case-defining agreements are often struck, an occasional but inevitable result will be terms that someone regrets in hindsight. Nevertheless, because of the demanding standards required for such relief and the need to let parties form settled expectations around final orders, courts rarely allow post hoc recutting of an original, bankruptcy-court-approved deal.*

Dkt. 74, pp. 7-8 (citations omitted, emphasis suppled). All that the Trustee argues is that "he did not know, through mistake and/or [unsupported] fraud, that he would be releasing claims" which he speculates are "equal in value to the entirety of all assets sold in the Sales Order." Dkt.89, p.25. Ignoring the fact that the claims are meritless against FIB and therefore have no value (as FIB is required to do under a motion to dismiss), the fully integrated Settlement and Sale Order is clear that the Trustee unequivocally knew he was granting all secured creditors a broad release of all unknown claims, "*of any and every character, now known or unknown, direct and/or indirect, contingent or matured, of whatever kind or nature.*" Dkt. 74, p.3. The Trustee's claims of

mistake and purported fraud to attempt to go back on his agreement are all based on his (wrong) assertion that FIB had knowledge of claims he did not have knowledge of, so he should not be bound by his agreement releasing unknown claims. Yet, in making this argument, the Trustee ignores this Court's decision, wherein this Court held that requiring parties on the opposite side of the negotiating table to disclose potential claims that are unknown to the other side leads to "*absurd and untenable results*"; as "*a party to pending or potential litigation almost always has "peculiar knowledge" of the strengths and weaknesses of its position (some of which may be privileged).*" Dkt. 74, p.12 (emphasis supplied). Significantly, as held by this Court, "a requirement that potentially harmful information be affirmatively disclosed as a condition to an effective settlement or release *would hamper and discourage settlement negotiations contrary to public policy.*" *Id.* Such a requirement would also create boundless uncertainty subjecting any general release to attack months or years down the road, *which again discourages settlement and disrupts the reasonable expectations of parties protected by general releases or, as here, an express release of any "unknown" claims.*" *Id.*

The Trustee fails to address why this case is any different from all the valid and enforceable settlements entered in bankruptcy cases for the last 147 years, wherein trustees or other parties released the other party from unknown claims to obtain some sought after resolution in the bankruptcy case. Indeed, it is not different. This is simply a matter of the Trustee regretting he agreed to release secured creditors from unknown claims five years ago. Because of the "demanding standards required for such relief and the need to let parties form settled expectations around final orders," the Trustee's attempts directly contradict the well-established policy of encouraging settlements in bankruptcy.

**B.    The Trustee Has Failed To Set Forth A Claim for Fraud As a Matter of Law.**

In his Opposition, the Trustee does not dispute that there are no facts alleged in the Complaint that when the stipulation regarding the Settlement and Sale Order was negotiated and

entered into, that FIB owed the Trustee any fiduciary duty or that FIB was in a confidential relationship with the Trustee. Instead, and conceding that his argument is contrary to this Court's prior decision, the Trustee continues to rely upon his allegation that FIB ostensibly had a duty to disclose the alleged claims because FIB purportedly held "special knowledge" which the Trustee conclusorily contends he did not have. Dkt.89, p.20. The law is to the contrary, as FIB and the Trustee were on opposite sides of the negotiations, and the Trustee points to no legal authority on point to the contrary, and certainly no Montana law.

1.   **No Duty to Disclose Exists, Negating Constructive Fraud.**

This Court stated in the Dismissal Order:

> The Trustee cites no authority indicating that this duty arises in the context of adverse parties negotiating a settlement agreement or release. ***This absence of authority is unsurprising because such a duty leads to absurd and untenable results.*** A party to pending or potential litigation almost always has "peculiar knowledge" of the strengths and weaknesses of its position (some of which may be privileged). The adverse party can seek to obtain some of that information either informally or through discovery, but there is no requirement that information not sought by the adverse party be unilaterally volunteered as part of the process.

Dkt.74, p.12 (emphasis supplied). This Court previously informed the Trustee in its Dismissal Order that if he did not provide "***on-point Montana authority***" that required settlement counterparties to affirmatively volunteer information to each other that "such a ***duty does not and should not exist.***" *Id.*, at p.13 (emphasis supplied).

Despite this directive, the Trustee failed to cite any Montana case addressing a duty to disclose in settlement negotiations. Indeed, the Trustee has failed to cite *any* case addressing a duty to disclose in settlement negotiations. Yet, in its brief, FIB cited eleven authorities holding that when parties are on opposite sides of the negotiation table, no duty to disclose purported superior information exists. One of those authorities was the Ninth Circuit decision, *Facebook Inc., v. Pacific Northwest Software, Inc.,* 640 F.3d 1034, 1039 (9th Cir. 2011). In that case, the

Ninth Circuit explained the difference between those cases addressing disclosure requirements in an investment relationship on the open market and those negotiating settlement agreements:

> When adversaries "in a roughly equivalent bargaining position and with ready access to counsel" sign an agreement to "establish[ ] a general peace," we enforce the clear terms of the agreement. Parties involved in litigation know that they are locked in combat with an adversary and thus have every reason to be skeptical of each other's claims and representations. *They can use discovery to ferret out a great deal of information before even commencing settlement negotiations. They can further protect themselves by requiring that the adverse party supply the needed information, or provide specific representations and warranties as a condition of signing the settlement agreement.* Such parties *stand on a very different footing from those who enter into an investment relationship in the open market,* where it's reasonable to presume candor and fair dealing, and access to inside information is often limited. There are also very important policies that favor giving effect to agreements that put an end to the expensive and disruptive process of litigation. "[I]t hardly seems necessary to point out that there is an overriding public interest in settling and quieting litigation."

*Id.* at 1039 (emphasis supplied). In response, the Trustee merely cites to *Cohen v. Subaru of Am., Inc.,* 2022 WL 721307 (D.N.J. 2022), in a footnote. Dkt. 89, p.33. The Trustee argues that the court in that case "conducted a survey on the legal issue at hand in 24 states, with Montana not being one of them", and that survey purportedly "revealed that the authority in those states was approximately split on whether a duty of disclosure arises outside of a confidential or fiduciary relationship." Dkt.89, *fn.*4, p.33. Yet, *Cohen* does not support the Trustee's argument. The issue in *Cohen* had nothing to do with negotiating a settlement agreement. *Cohen* consolidated four putative class action lawsuits filed against Subaru for failure to disclose a known defect. *Id.* at *1. In ruling on a motion to dismiss, the court addressed each of the applicable state law's constructive fraud elements, which did not include Montana, to determine whether the claim should be dismissed. *Id.* at *19-26. Contrary to the Trustee's statement, many of those claims were dismissed because the state law required a fiduciary or confidential relationship. *Id.* In any event, *Cohen* has nothing to do with the established law that no duty of disclosure exists when on opposite sides of the negotiating table. Instead, *Cohen* is more analogous to the type of case distinguished in

*Facebook*, regarding parties on the open market, and of course addressed individual consumer rights, rather than a sophisticated Trustee negotiating a settlement though his attorney to obtain the benefits of a sale.

As to Montana cases, the Trustee merely cites to the same three cases he cited to in support of his Second Amended Complaint, *Morrow v. Bank of America, N.A.,* 324 P.3d 1167 (Mont. 2014); *Mattingly v. First Bank*, 947 P.2d 66 (Mont. 1997), and *Deist v. Wachholz,* 678 P.2d 188 (Mont. 1984), all of which are still not applicable. In *Morrow*, the lender made an affirmative misrepresentation in providing financial advice to the consumer borrower, establishing a fiduciary relationship. *Id.* at 1177-1178. Similarly, in *Deist*, the court found the bank acted as a financial advisor making statements to the consumer about a potential sale, establishing a fiduciary duty. *Id.* at 194. In *House v. U.S. Bank N.A.,* 481 P.3d 820 (Mont. 2021) the Montana Supreme Court in distinguishing *Morrow* and affirming the dispositive motion in favor of the lender cited *Lachenmaier v. First Bank Sys., Inc.,* 803 P.2d 614, 619 (Mont. 1990), which held there is "no fiduciary duty in commercial lending context where the lender does not provide extraordinary financial advice, the borrower does not rely on such extraordinary financial advice, *or* the borrower acts on third party advice, such as that of legal counsel. *Id.* at 829. Here, the Trustee cannot and has not alleged an affirmative misrepresentation by FIB in the settlement negotiations nor a fiduciary relationship with the Trustee. Accordingly, the cases do not support his arguments. Finally, *Mattingly* has nothing to do with settlement negotiations or agreements and instead addresses Montana's special disclosure exception prohibiting the suppression or concealment of a serious defect in property to the buyer of the property. *Id.* 678 P.2d at 72.

The only other two cited cases do not support the Trustee's duty of disclosure argument[2]. In *Richfeld Bank & Trust Co., v. Sjogren*, 244 N.W.2d 648 (Minn. 1976), the court held that its

---

[2] The Trustee fails to dispute any of the cases cited in FIB's Brief addressing the lack of a duty of disclosure by a creditor to a bankruptcy trustee. Dkt. 86, p.35.

holding regarding disclosure duty was limited to the "unique and narrow special circumstances" of the case. *Id.* at 652. Those unique and narrow special circumstances consisted of a bank employee actively participating in the affairs of the *seller of property* to the extent he was found to "call the shots" for the seller and then not disclosing pertinent information to the buyer, whom the bank made the loan to purchase the property. *Id.* at 650-652. *Richfeld* had nothing to do with two parties on opposite sides of the negotiation table; and unlike this case - - all parties, including the Trustee - - had the third-party advice of legal counsel in those negotiations. Similarly, *Barnett Bank of West Florida v. Hooper*, 498 So.2d 923 (Fla. 1987) is inapplicable. In *Barnett Bank*, the employee affirmatively represented that an investment was sound and was found to have a confidential and fiduciary relationship. *Id.* at 924; 926. Here, the Trustee cannot and has not alleged such facts.

Further, the Trustee fails to adequately address the privacy issues facing lenders under the Montana constitution, statutes, and federal SAR regulations, prohibiting disclosure of a customer's private information. Citing only one case, which did not even address a bank customer's privacy rights, the Trustee argues he stepped into the shoes of the debtor in bankruptcy, so the privacy rights of the bank's customers are not at issue. The cited case, *Akhoian Enters. First-Citizens Bank & Trust Co.,* 630 B.R. 329 (C.D. Cal 2021) merely holds that a trustee can prosecute claims in the debtor's name. *Id.* at 334. The Trustee also argues he is merely seeking information about FIB's conduct, not the debtors, which makes no sense, since the allegations all arise from the debtor's and other related parties' bank accounts at FIB and PMB. In any event, in "stepping" into the debtor's shoes, the Trustee had the ability and ease under Federal Bankruptcy Rule 9016 to issue a subpoena to obtain the bank customers' information. This he did not timely do, and in light of the legal prohibitions against a lender disclosing its customers' private information under Montana and federal law, an affirmative duty to disclose is not supported by the law.

There is no dispute in this case that the Trustee unequivocally and broadly agreed in a *fully integrated agreement* to release FIB from *all **unknown** claims*, "*whatsoever of any and every character*," "*direct or indirect*," "*of whatever kind or nature*," and "*of any matter or things done*." Dkt.29, Ex.B,p.16,¶7. If FIB were required to disclose information as to *unknown* claims, they would not be unknown. The ultimate result of the Trustee's argument is a release of "unknown claims" would never be enforceable because if the Trustee later found a claim he did not know about, the released party would still be subject to defending the claim (despite the lack of merit) because the unknown claim was not disclosed. Such a result would have a material chilling effect on settlement. Accordingly, the Trustee's arguments continue to belie common sense.

### 2. No Direct Inquiry Was Made By the Trustee to FIB, Negating Fraud.

The Trustee does not dispute that indirect inquiries are insufficient to state a claim for constructive fraud. Dkt.89, pp.26-27. Instead, he argues he made a direct inquiry and regardless that the determination of inquiry generally cannot be made on a dispositive motion. *Id.* Yet, in determining a dismissal motion, "while the court must accept all *well-pleaded factual* allegations as true, *conclusory* statements do not suffice." *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (emphasis supplied). Determining whether a complaint states a plausible claim for relief will. . . be a context specific task that requires the reviewing court to draw on its *judicial experience and common sense.*" *Id.* at 679. As in *In re Veg Liquidation*, "the Trustee uses the terms "fraud" . . . loosely and often. However, once the smear of the Trustee's conclusory allegations is removed, we agree with the bankruptcy court that the amended complaint does not cite to any facts that would elevate such claims from a mere possibility to plausibility." *Supra.,* 583 B.R. at 203. Further, speculations do not constitute facts. *Id.*, *In re Waypoint Leasing Holdings. Ltd.*, 607 B.R. 143, 154 (Bankr. S.D.N.Y. 2019).

The Trustee's conclusions ignore the standard of a direct inquiry, which is articulating with reasonable clarity the *particular* information desired, as well as the conveyance of the *significance*

of the question asked. *Shutter Shop, Inc. v. Amersham Corp.*, 114 F. Supp. 2d 1218, 1226 (M.D. Ala. 2000). The inquiries need to be made *directly* to the party at issue regarding the *specific* issue. *In re Gen, Motors LLC Ignition Switch Litig.*, 257 F. Supp. 3d 372, 425 (S.D.N.Y. 2017) (granting motion to dismiss on fraud claim, court stated, "Plaintiffs do not allege that they made any *inquiries directly* to New GM *regarding* the safety of their vehicles or the existence of any potential defects."); *De Wit v. Firestar Corp.*, 879 F. Supp. 947 (N.D. Iowa 1995) (failure to ask the *specific* questions about the financial condition negated a duty to disclose); *Lambert v. Firstar Bank, N.A.*, 127 S.W.3d 523, 527 (Ark. App. 2003) ("ordinarily, absent affirmative fraud, a party, in order to hold another liable in fraud must seek out the information he desires and may not omit inquiry and examination and then complain that the other did not volunteer information.").

The conclusion that the Trustee made a direct inquiry to FIB belies common sense. The only allegation the Trustee relies on is that the Trustee's attorney made a generic statement in December 2015, *eight* months prior to negotiation of the Release, directed to unsecured creditors in a room full of creditors and attorneys, in which he stated that he "*welcomed*" any information about claims "they *believed should be pursued.*" Dkt.89, pp.38-39. Not only could the information legally *not* be volunteered by FIB due to customer privacy issues and SAR prohibitions, the inquiry was not even directed specifically to FIB, a secured creditor at the time. Further, un- refuted by the Trustee, he makes no allegation he ever directly asked FIB whether FIB knew of any claims against the Debtor, against FIB, against PMB, or against any other party; and certainly not when he was negotiating the terms of the Release. The Trustee further did not dispute that "there are no allegations that the Trustee made any specific and direct inquires to FIB regarding the known and unknown claims the Trustee was agreeing to release as of September 26, 2016, as part of the Settlement and Sale negotiations;" and that "the Trustee had from October 2015 through September 26, 2016 to make specific inquires to FIB to determine if the Trustee wanted to enter into a general release with FIB, and yet, he failed to do so." Dkt. 86, p.30, 37-39.

Instead, the Trustee relies upon an alleged generic question about claims unsecured creditors *believed should be pursued*. Notably, the Trustee did not attempt to refute the fact that "there is no allegation that FIB *believed* the Trustee *should pursue the claims* it is currently pursuing against FIB, PMB, or the Debtor." *Id.*, p.30. "To the contrary, FIB *believes there are no substantive valid claims being pursued* by the Trustee. *See* Dkts. 27-1, 64." *Id.*, p.30. Thus, the general and single question alleged is not even pertinent to the Release.

Further, the Trustee is simply wrong when he contends that dispositive motions are not appropriate when direct inquiry is at issue. *See dismissal cases cited and un-refuted by Trustee*, Dkt.86, pp. 38-39.

### 3. No Timely Due Diligence Has Been Alleged Negating Fraudulent Concealment.

The Trustee does not dispute that under Montana law, the party asserting fraudulent concealment must exercise due diligence to discover the facts. *Holman v. Hansen*, 773 P.2d 1200, 1203 (Mont. 1989). Nor does the Trustee refute that his allegations in the Complaint regarding such due diligence are merely conclusions, not facts. *See* Dkt.86, p.41; Dkt.89, pp.39-40. Instead, he argues that reasonable diligence is a question of fact, not law; and he argues that he does not need to plead *factual* allegations of due diligence citing *In re Vitamins Antitrust Litig.*, and *In re Nine West Shoes Antitrust Litig.* Here again, the Trustee is wrong.

First, the Montana Supreme Court held in *Holman*, that whether fraud claims are barred because they should have been discovered is "a question of law." *Id.* at 1203. The Montana case cited by the Trustee was careful to point out that "*In this instance*, the time at which plaintiffs discovered the facts giving rise to the cause of action is a question of fact." *Williams v. DeVinney*, 856 P.2d 546, 552 (Mt. 1993); *e.g. Yellowstone Conference of United Methodist Church v. D.A. Davidson, Inc.*, 741 P.2d 794, 798 (Mont. 1987) (dismissal granted as time barred where no facts of affirmative acts to obscure the cause of action were alleged); *In re ZF-TRW Airbag Control Units Prod. Liab. Litig.*, 2022 WL 522484, *124 (C.D. Cal. February 9, 2022) (dismissal under

12(b)(6), citing Montana law, "to establish fraudulent concealment, Plaintiffs must show they exercised due diligence. . . ordinary diligence must be exercised by the aggrieved party in the discovery of the facts constituting the fraud or deceptive practice.") internal citations omitted.

Second, neither of the cases cited support the Trustee's argument that he does not have to plead facts regarding due diligence. *In re Vitamins,* the court held that where plaintiffs plead facts supporting *active* concealment by the Defendants, the plaintiff does not need to exercise due diligence to toll the statute of limitations, and therefore in that instance due diligence does not need to be pled. *In re Vitamins Antitrust Litig.,* 2000 WL 1475705, *1,*4 (D.C.Cir. 2000). In *In re Nine West Shoes*, the court held that plaintiffs **must plead due diligence with** *specificity*, citing "*In re Miller Lynch,* 154 F.3d at 60 (affirming **dismissal of complaint** where plaintiffs did not allege that they exercised due diligence; **they make no allegation of any specific inquiries** [of defendant], let alone detail such inquiries.)." *In re Nine West Shoes Antitrust Litig.,* 80 F.Supp.2d 181, 193 (S.D.N.Y. 2000). In *re Nine West Shoes*, the court found due diligence was sufficiently pled as plaintiff alleged detailed *facts* as to the "*affirmative,*" deceptive practices and techniques of secrecy employed. *Id.*

To proceed with a fraudulent concealment claim, the Trustee needed to be able to factually allege what due diligence he actually conducted in attempting to obtain information about the purported claims *prior to entering into the Release*. In light of the Trustee's statutory duty to investigate the acts, conduct, assets, liabilities, and financial condition of the debtor under 11 U.S.C. § 1106(a)(3) and the statements made at the December 2015 Creditor Meeting regarding the downloading of Debtor's entire computer server (Dkt.83, Ex.A,109:3-109:20), it belies common sense to argue FIB believed the Trustee did not have what information he needed to determine if he wanted to grant a general, full, complete release of all unknown claims against FIB. This is particularly significant given there are no allegations the Trustee ever made any specific and direct inquiries to FIB regarding whether it had any knowledge of any check-kiting

activity or any other claims against FIB or anybody else. No discovery was conducted against FIB in those eight months; no subpoenas issued; nor was there any request for FIB to provide any such representations in the Settlement and Sale Motion. Indeed, the Trustee's attorney expressly told the court that *"no one's questioning the releases."* Dkt. 74, pp. 3-4. The Trustee's inability to allege either due diligence or factually allege that FIB believed he did not have knowledge regarding bank activities and emails, is fatal.

### 4. No Affirmative Conduct Has Been Alleged Negating Fraudulent Concealment.

The Trustee asserts FIB mis-states the law when it argues that the Trustee's inability to plead facts that FIB engaged in conduct that was "calculated to obscure the existence of the cause of action," is fatal to his fraud claim. Dkt.89, p.40. The Trustee is wrong. *See Holman, supra.,* 773 P.2d at 1204; *e.g. Christian v. Atlantic Richfield Co.,* 358 P.3d 131, 156 (Mont. 2015) ("Fraudulent concealment consists of the employment of artifice, planned to prevent inquiry or escape investigation, and mislead or hinder acquisition of information disclosing a cause of action."). Under Montana law, absent a fiduciary duty or special relationship creating a duty, sufficient facts must be plead that the party "by *words or conduct created a false impression*" and then "failed to disclose the relevant facts." Dkt.86, p.42, citing *H-D Irrigating, Inc. v. Kimble Props., Inc.,* 8 P.3d 95, 103 (Mont. 2000). As set forth above, the Trustee has failed to establish FIB had a duty to disclose. Accordingly, the Trustee was obligated to plead facts of *affirmative conduct* by FIB to mislead or hinder the Trustee from obtaining information that would disclose a cause of action, which the Trustee did not do (because such facts do not exist).

### IV.
### THE CLAIM OF UNILATERAL MISTAKE FAILS UNDER MONTANA LAW.

In light of his inability to adequately plead fraud, the Trustee argues that the Settlement Agreement should be revised to allow him to reform the agreement wherein he retains all the benefits of the sale, but denies FIB the benefit of its bargain, the Release. This, Montana law, prohibits.

The Trustee ignores the well-established law in Montana that reformation cannot be utilized to create a new or different contract or make significant additions. *Estate of Irvine v. Oaas,* 309 P.3d 986, 990 (Mont. 2013). As set forth in *Solheim v. Earl E. Foss Trucking, Inc.,* 2005 WL 4708181, * (D.Mt. 2005), the purpose of reformation is not to create a new agreement, "it is *only* to establish and perpetuate an already existing contract and *to make it express the real intent of the parties as such intent existed at the time of making the agreement*." *Id.* at *7-8 (emphasis supplied). Accordingly, a court is "not empowered to amend and alter a contract" made by the parties "by inserting therein words, terms or conditions on which there *was never a meeting of the minds*." *Id.* at *8 (emphasis supplied). Indeed, "it is the duty of the court to enforce contracts which the parties themselves have made and *not* to make significant additions thereto and thus *give to one or more of the parties, benefits and advantages on which the minds of the contracting parties have never met*." *Id.* (emphasis supplied). The court cannot make a contract it thinks the parties "would have made, *if better informed*, by inserting in the instrument important conditions *which the parties never fully assented to*. The court merely makes the instrument what the parties intended to be." *Id.,* (emphasis supplied). The party seeking reformation must meet a clear and convincing standard because "a party seeking reformation of a contract must overcome a strong presumption that the writing contains the final agreement of the parties and expresses their real purpose and intent." *Johnson v. American Ins. Co.,* 2008 WL 11349939, at *3 (D.Mont. 2008), *citing Sullivan v. Marsh,* 225 P.2d 868, 872 (Mont. 1950). As noted by the very judge that entered the Settlement and Sale Order at issue, *when the intentions of the parties are irreconcilable, reformation is not a proper remedy*. *In re Amen,* 2015 WL 25194 (Bankr. D.Mont. 2015).

In this case, there can be no dispute that *at the time* the Trustee, FIB, and the other parties entered into the Settlement Agreement, incorporated and approved in the final Settlement and Sale

Order, the Trustee unequivocally intended to grant a broad release[3] of *"any and all actions, . . . claims. . . of every character, now known **or unknown**[4], . . . **of whatever kind or nature**,"* to the Secured Creditors, which included FIB. Dkt.29, Ex.A (51:2- 53:2; 54:18-55:3); Ex. B, ¶7; Ex.E, ¶¶4,12,34,35. There was no mistake that the Trustee's intent *at the time the agreement was entered into* was to grant a broad release of all unknown claims. Indeed, that agreement reflects the parties' intent at the time the agreement was made; - - which was in exchange for "that big concession" of the secured creditors consenting to the sale at a discounted payoff, in return *"we are giving them a general release of claims;"* of which *no one was questioning the releases.* Dkt.29, Ex.A (51:2- 53:2). It was only later, years after the Trustee received the benefit of the sale, that he now alleges *"he is better informed,"* and so he wants to go back and *change* the agreement to reflect a *new* intent to limit the scope of the release of *"any and all* unknown claims of whatever kind or nature" to merely unknown avoidance claims. Thus, the intentions are irreconcilable and the Settlement Agreement cannot be reformed under Montana law[5].

---

[3] The Trustee cites two cases arguing that reformation is particularly important as to releases; yet, neither of those cases have anything to do with reformation. *Benson v. Diverse Computer Corp.,* 89 P.3d 981, 985 (Mont. 2004) (insufficient evidence to find the parties entered into a release); *Zenith Radio Corp. v. Hazeltine Research, Inc.,* 491 U.S. 321, 343 (1971) (release did not apply because they were not a party to the release). Indeed, the Trustee cites to no case in his Opposition where the court reformed a settlement agreement.

[4] The Trustee cites several case (none of which are from Montana) for the proposition that a "general release does not extend to claim that the releaser is not aware of." Dkt.89, p.43-44. Of course, the very definition of an unknown claim is a claim that the releaser is not aware of, and the Trustee chose to draft a release that did not just "generally" release all claims, but specifically released all "unknown claims of whatever kind or nature." *See In re F.H. McGraw & Co.,* 473 F.2d 465, 469 (3rd Cir. 1973) ("this is not to suggest, however that where there is specific, as distinguished from general, language, in an instrument… that we would not give full force and effect to a release which operates as an absolute bar to recovery."). In any event, in accordance with the application of contract law, releases that release unknown and future claims *are enforceable under Montana law* in accordance with the language of the agreement. *Rich v. Ellingson,* 174 P.3d 491, 494-495 (Mont. 2007). Thus, the cases cited by the Trustee to the contrary are not pertinent to this case.

[5] None of the Trustee's arguments or cited case authorities hold otherwise. Further, none of the reformation cases cited in *fn.* 2 of the Trustee's Opposition, support his argument. In the cited case that actually

## V.

## THE TRUSTEE FAILS TO STATE A CLAIM AS A MATTER OF LAW.

### A.     The Trustee Has Failed To Allege Sufficient Facts Warranting Tolling.

The Trustee argues that whether a claim has been tolled is a question of fact, not subject to a Rule 12(b)(6), and it was not until he reviewed emails and correspondence that he discovered the (meritless) claims, which he asserts was in the discovery period.  Further, the Trustee argues he is not barred under *Payne v. Hall,* 458 P.3d 1001 (Mont. 2020), because Hatzenbeller exceeded his authority and his actions were harmful.  The Trustee's arguments fail.

First, failure to allege sufficient facts which would give rise to tolling, is subject to 12(b)(6) dismissal, as set forth in FIB's cited cases, none of which the Trustee distinguished.  Dkt.86, pp 49-50.  Second, in light of (i) the fact that in October 2015 the Trustee downloaded the entire computer server and had all of the corporate records (Dkt.83,Ex.A,108:10-109:22); and (ii) the Trustee's obligations to investigate the financial condition and operation of the debtor's business within two years from the bankruptcy filing under § 1106; the Trustee's conclusory allegations that he could not have reasonably discovered the purported claims is insufficient to survive a 12(b)(6) motion.  He alleges no *facts* to support his tolling claim; only conclusions.

Further, the allegations in the Complaint, do not avoid the holding in *Payne*.  The Trustee argues that Hatzenbeller exceeded his authority by alleging that the other members did not know or participate.  Yet, the Complaint clearly identifies Hatzenbeller as the managing member in control of the Debtor.  Compl. ¶¶12-14, 25-26.  The allegations also clearly allege that Hatzenbeller on behalf of the Debtor engaged in check kiting "in an effort to address *Shoot the Moon's* financial

---

reformed an agreement, it was reformed to have the agreement meet the intention of the parties when the agreement was entered into; not to add or change material terms not agreed upon or the reformation claims.  *In re B-Bar Tavern, Inc.,* 506 B.R. 879, 929 (Bankr.D.Mont. 2013) (evidence shows that PMB intended to list Barnes, Inc., and therefore a mutual mistake exists).  Indeed, in *Wag Hotels, Inc. v. Wag Labs, Inc.,* 2022 WL 1212012, *6-7 (N.D.Cal. 2022), the case was dismissed for failure to adequately plead a reformation claim, holding that "conclusory statements and attorney argument about materiality are insufficient to plead the parties' true intention at the time the Settlement Agreement was formed."

troubles." *Id.,* ¶ 25. There are simply no allegations that Hatzenbeller engaged in the purported check kiting with the Debtor's accounts to benefit himself, and certainly not to the exclusion of Shoot the Moon. Further, there are no allegations that Harzenbeller was acting outside the scope of his authority as the managing member of Shoot the Moon. Instead, the allegations are that the purported check kiting was done by Hatzenbeller because Shoot the Moon had limited options to obtain the financing necessary to meet *its* working capital and obligations. *Id.* ¶24. Accordingly, the Trustee was imputed with Hatzenbeller's knowledge when he was appointed in October 2015, precluding any tolling.

### B. The Doctrine Of *Pari Delicto* Precludes The Tort Claims.

The Trustee does not dispute that under the doctrine of *in pari delicto* he would be precluded from pursuing the tort claims. Instead, the Trustee argues that the Complaint sufficiently alleges the adverse interest exception to the *in pari delicto* doctrine. He argues that Hatzenbeller acted adversely to the Debtor's interests and there are no allegations in the Complaint that the other members of the Debtor participated in the alleged bad acts, so the exception applies. The Trustee misstates the exception.

The exception is not whether an agent's conduct purportedly *caused* harm, it is whether the agent *acted* in a manner adverse to the corporation's interests. *Sugarman v. Taylor (In re Yellow Cap Coop., Inc.,)*, 602 B.R. 357, 362 (Bankr.N.D.Cal. 2019). Further, that adverse conduct must have been engaged solely for the benefit of the agent. *In re CBI Holding Co.,* the Court explained, "under the adverse interest exception, the knowledge of the company management involved in the fraud will not be imputed to the company itself, *if such management was acting totally for its own interest* and not that of the corporation." *Bankr. Services, Inc. v. Ernst & Young (In re CBI Holding Co.,)* 247 B.R. 341, 365 (Bankr. S.D.N.Y. 2000) (emphasis supplied); *e.g. In re 1031 Tax Group, LLC, supra.,* 420 B.R. at 200 (the exception is limited in that it "only applies when the guilty manager has *totally abandoned the interest of the corporation. . .* In other words,

a manager must intend his actions to advance *only his interests*, and not the corporation's, for the exception to apply); *In re Lehr Construction, Corp.*, *supra.*, 528 B.R. at 612 (same).

Further, even if an agent acts in his or her own interest rather than the company's interest, *in pari delicto* still applies where the agent was the sole person in control of the company's operations. *In re 1031 Tax Group, LLC, supra.*, 247 B.R. at 202; *In re Yellow Cab Coop.*, 602 B.R. at 365; *e.g. R.F. Lafferty, supra.*, 267 F.3d at 359-60. The allegations establish that Hatzenbeller solely controlled Debtor's operations. Complaint ¶¶12-14, 25-26. Thus, even if the Trustee were able to allege that Hatzenbeller conducted the alleged wrongful acts to benefit himself to the exclusion of the Debtor, he was the sole person in control and therefore *in pari delicto* applies.

### C. The Trustee Cannot Establish A Duty, Which is Fatal to the Tort Claims.

The Trustee fails to cite to a single case to refute the pages of cases cited by FIB holding that FIB owed no duty that would support the asserted tort claims. Dkt. 86, pp. 56-57. The sole case cited by the Trustee, *Busta v. Columbus Hosp.*, 916 P.2d 122, 133-30 (1996), is merely a tort case where a patient at a hospital suffered fatal injuries when going through a window. That case certainly cannot support an exception to the general rule that the relationship between a bank and its customer is that of a debtor and creditor, and does not give rise to any special duties. *Graham-Rogers v. Wells Fargo Bank, N.A.*, 397 Mont. 262, 270, 449 P.3d 798, 804 (Mont. 2019); *See also* Dkt.91, ABC's Reply Memorandum in Support of Motion to Dismiss, which is incorporated herein in its totality, as equally applicable to FIB.

### D. No Claim Exists For Unjust Enrichment Or Conversion As A Matter Of Law.

The Trustee fails to address the fact that his conversion claim fails to satisfy the elements set forth by Montana law. The overdraft fees would not have been properly owned by the customer when the complaint admits that the customer overdrafted the account, of which the customer was contractually obligated to pay for. Further, as set forth above, the Trustee is bound by the Debtor's

acts and knowledge of its Managing Member and therefore is barred from seeking relief under any equitable claims.

## VI.
## CONCLUSION

For the reasons set forth in the record in this case, the Opening Brief, the briefing by American Bank Center and this reply memorandum, FIB respectfully submits the Trustee's Complaint should be dismissed with prejudice and FIB should be entitled to stop incurring litigation fees and costs in defending meritless claims, of which the Trustee represented it would never have to do in the first place.

Dated: June 22, 2022        HANSBERRY & JOURDONNAIS, PLLC

By/s/ Jenny M. Jourdonnais
    Jenny M. Jourdonnais (#11906)
    Attorneys for Defendant First Interstate
    Bank

Dated: June 22, 2022        HAWLEY TROXELL ENNIS & HAWLEY LLP

By _____
    Sheila R. Schwager, ISB No. 5059
    Attorneys for Defendant First Interstate
    Bank

<u>CERTIFICATE OF SERVICE</u>

     I HEREBY CERTIFY, under penalty of perjury, that on this 22nd day of June, 2022, I electronically filed the foregoing FIRST INTERSTATE BANK'S REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS THIRD AMENDED COMPLAINT with the Clerk of the Court using the CM/ECF system, and a copy of the foregoing was served by (1) electronic means pursuant to LBR 9013-1(c) on the parties noted in the Court's ECF transmission facilities.

Sheila R. Schwager