# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF MONTANA

| | |
|---|---|
| In re:<br><br>SHOOT THE MOON, LLC,<br><br>               Debtor. | Case No. 2:15-bk-60979-WLH11 |
| JEREMIAH FOSTER,<br><br>               Plaintiff,<br>    v.<br><br>FIRST INTERSTATE BANK; AMERICAN BANK CENTER; JOHN DOES 1-10,<br><br>               Defendants. | Adv. Proc. No. 2:21-ap-02005-WLH<br><br>**MEMORANDUM OPINION** |

    A common challenge in the entertainment industry is improving on an original work for a sequel. Litigators can face the same challenge when crafting an amended complaint to address a prior version's deficiencies.

    In this adversary proceeding, the plaintiff amended his complaint to address defects requiring dismissal of a prior complaint. Defendants again move to dismiss on a variety of bases, including because an unchallenged 2016 order approving and incorporating a release of defendants bars the claims. For the reasons set forth below, the new complaint should also be dismissed, this time with prejudice.

## BACKGROUND & PROCEDURAL POSTURE

    The general background of this litigation is detailed in a previous opinion in which the court dismissed without prejudice the bankruptcy trustee's prior complaint because the parties released each other from liability on all such claims.[1] The court will not repeat the details here but directs readers to the previous opinion

---

[1] *See Foster v. First Interstate Bank (In re Shoot the Moon, LLC)*, 635 B.R. 568 (Bankr. D. Mont. 2022).

and incorporates its background discussion, defined terms, and legal analysis as if fully set forth herein.

Commencing where the previous opinion concluded, the Trustee timely filed an amended complaint to remedy the defects in the dismissed complaint.[2] In an effort to invalidate the release barring his claims, the Trustee alleges in the present complaint that (i) he made a generalized inquiry about the existence of potential claims at a creditors' meeting defendants attended; (ii) such inquiry imposed a duty of disclosure on defendants; (iii) defendants breached this duty by their silence; and (iv) therefore, the trustee's subsequent release of the undisclosed claims is not binding.[3] The newest complaint further adds allegations designed to support a theory that the Trustee's consent to the release was a mistake, as well as a revised count expressly seeking reformation of the stipulation containing the release.[4]

Defendants separately move to dismiss the amended complaint on numerous grounds, including once again because the release bars the asserted claims. In this latest round of motions, though, defendants amplify and directly press an argument previously suggested but undeveloped until now: The Trustee is barred from attacking the release because that release is part of a final, unchallenged court order.[5] The court has received the benefit of comprehensive briefing and oral argument regarding this second generation of dismissal motions and the matter is ready for decision.

## GENERAL PRINCIPLES

### *Jurisdiction, Power, and Rule 12(b)(6) Standards*

The court has subject matter jurisdiction regarding, and the judicial power to finally resolve, this adversary proceeding for the reasons detailed in the court's previous opinion and in light of the Trustee's continued express consent "to entry of a final order or judgment by this Court."[6] The standards for dismissal under Rule 12(b)(6) have not changed since the previous opinion.[7]

---

[2] Third Am. Compl., ECF No. 78.

[3] *See id.* ¶¶ 70-81.

[4] *See id.* ¶¶ 84-90, 105-114.

[5] *See Foster*, 635 B.R. at 576 n.43 (noting but not addressing this issue).

[6] *See id.* at 573-74; Third Am. Compl. ¶ 3, ECF No. 78.

[7] *See Foster*, 635 B.R. at 574.

*Finality of Court Orders and the Prohibition Against Collateral Attacks*

    The legal system and society generally have a significant interest in the finality of court orders and judgments.[8] In turn, this interest requires that federal court orders carry the full force of law unless and until extinguished through appropriate processes.[9] Finality principles are usually advanced by requiring dissenting parties to pursue a direct appeal within a certain timeframe. But, because rigidly applying the appellate-finality doctrine might conflict with other important interests in some instances, Federal Rule of Civil Procedure 60(b) also permits relief from final orders or judgments in certain exceptional circumstances. Yet even Rule 60 reflects the significant value of finality and imposes its own finality-driven limitations, such as deadlines for parties to seek relief.[10]

    If parties do not exercise available avenues for relief through either a timely appeal or a Rule 60(b) motion, they may not pursue de facto challenges to the relevant order or judgment in another proceeding. This collateral attack doctrine prevents courts from effectively overruling or altering final orders via indirect routes[11] and is firmly grounded on the need for finality.

    These principles apply equally in the bankruptcy context. Indeed, over many decades the Supreme Court and other courts have repeatedly barred collateral attacks on myriad breeds of bankruptcy court orders.[12]

---

[8]   *See, e.g.*, *Cobbledick v. United States*, 309 U.S. 323, 326 (1940) (explaining that finality "is not a technical concept of temporal or physical termination" but "the means for achieving a healthy legal system"); *Southern P. R. Co. v. United States*, 168 U.S. 1, 49 (1897) (detailing how finality principles are "demanded by the very object for which civil courts have been established, which is to secure the peace and repose of society by the settlement of matters capable of judicial determination," including because "the aid of judicial tribunals would not be invoked for the vindication of rights of person and property, if, as between parties and their privies, conclusiveness did not attend the judgments of such tribunals in respect of all matters properly put in issue and actually determined by them"); *Drobny v. Comm'r*, 113 F.3d 670, 679 (7th Cir. 1997) ("The rule of finality lends stability to our legal system, and it is especially important in this litigious era when adversely affected parties seize upon almost any opportunity to prolong litigation.").

[9]   *See, e.g.*, *AP Indus., Inc. v. SN Phelps & Co. (In re AP Indus., Inc.)*, 117 B.R. 789, 797 (Bankr. S.D.N.Y. 1990).

[10]   *See* Fed. R. Civ. P. 60(c); *Kemp v. United States*, 142 S. Ct. 1856, 1861 (2022).

[11]   *See, e.g.*, *Uecker & Assocs. v. L.G. Hunt & Assocs. (In re Am. Basketball League, Inc.)*, 317 B.R. 121, 128 (Bankr. N.D. Cal. 2004) ("Unlike a direct appeal, a collateral attack questions the validity of a judgment or order in a separate proceeding that is not intended to obtain relief from the judgment. It seeks, through the second suit, to avoid or evade the earlier judgment, or to deny its force and effect. Even where the second action has an independent purpose and contemplates some other relief, it is a collateral attack if, in some fashion, it would overrule a previous judgment." (citation omitted)).

[12]   *See, e.g.*, *Travelers Indem. Co. v. Bailey*, 557 U.S. 137, 151-54 (2009) (injunction order entered in connection with chapter 11 reorganization); *Celotex Corp. v. Edwards*, 514 U.S. 300, 313 (1995) (injunction under Bankruptcy Code section 105(a)); *Sampsell v. Imperial Paper & Color Corp.*, 313 U.S. 215, 218-19 (1941)

# ANALYSIS OF THE COMPLAINT & MOTIONS TO DISMISS

## *The Complaint Is a Collateral Attack on a Final Order*

In the main bankruptcy case, the Trustee, defendants, and other entities entered into a stipulation as part of a deal obtaining their collective consent to an asset-sale transaction proposed by the Trustee.[13] The stipulation includes an expansive release of all known and unknown claims that, if operative, plainly releases all claims asserted here.[14] In September 2016, at the Trustee's urging, the bankruptcy court authorized and approved, among other things, the asset sale and the parties' stipulation.[15] But the bankruptcy court order did more than simply approve the stipulation and its release terms; the order also provides that:

- "The Secured Creditors' Stipulation and all of the terms and conditions thereof are hereby approved, with such terms and conditions incorporated into this Order by this reference";[16]

- "Nothing contained in any . . . order of any type or kind entered in [the main bankruptcy case or any converted chapter 7 case] or any related proceeding subsequent to entry of this Order, shall conflict with or derogate from the provisions of the . . . Stipulations, as approved by this Order, or the terms of this Order";[17] and

---

(Douglas, J.) (substantive consolidation order); *Chicot Cnty. Drainage Dist. v. Baxter State Bank*, 308 U.S. 371, 376-77 (1940) (chapter IX confirmation order); *Stoll v. Gottlieb*, 305 U.S. 165, 171-72 (1938) (plan confirmation order); *Robertson v. Howard*, 229 U.S. 254, 263-64 (1913) (bankruptcy sale order); *New Lamp Chimney Co. v. Ansonia Brass & Copper Co.*, 91 U.S. (1 Otto) 656, 660-62 (1876) (decree adjudging a corporation bankrupt); *Com. Bank of Manchester v. Buckner*, 61 U.S. (20 How.) 108, 125 (1858) (bankruptcy discharge order); *Houston v. City Bank of New Orleans*, 47 U.S. (6 How.) 486, 504-06 (1848) (bankruptcy sale order); *Valley Nat'l Bank v. Needler (In re Grantham Bros.)*, 922 F.2d 1438, 1442 (9th Cir. 1991) (bankruptcy sale order); *Lindsey v. Ipock*, 732 F.2d 619, 622 (8th Cir. 1984) (bankruptcy sale order); *Seemann v. Nat'l Bank of Com.*, 112 F.2d 378, 380 (5th Cir. 1940) (bankruptcy sale order and separate order requiring payment of certain sale proceeds to assignee bank); *Atl. Dynamite Co. v. Reger*, 200 F. 1002, 1004-05 (N.D.W. Va. 1912) (bankruptcy discharge order).

13  *See* Stipulation [etc.], ECF No. 29-1 at pp. 51-54 of 149. The court again takes judicial notice of relevant filings and events in the underlying bankruptcy case. *See Foster*, 635 B.R. at 571 n.1.

14  Stipulation [etc.] ¶ 7, ECF No. 29-1 at p. 66 of 149.

15  Order Authorizing and Approving [etc.], ECF No. 29-1 at pp. 88-126 of 149.

16  *Id.* ¶ 4, ECF No. 29-1 at p. 114 of 149.

17  *Id.* ¶ 34, ECF No. 29-1 at p. 124 of 149.

- "[A]ll of the provisions of this Order are non-severable and mutually dependent."[18]

No party appealed or otherwise challenged the September 2016 order. Thus, the order is final.

Based on these undisputed events, defendants contend that the relief the Trustee seeks is a prohibited collateral attack on the September 2016 order. The court agrees. Allowing the Trustee to prosecute his claims despite the incorporated release terms would "conflict with or derogate from" explicit terms of the order, which the order itself forbids in any "proceeding subsequent to entry of this Order." This necessarily includes the instant adversary proceeding. Moreover, attempting to cleave off and modify the release in isolation from the remainder of the order also conflicts with its non-severability language.

Simply put, so long as the September 2016 order remains in full force and effect, the collateral attack doctrine bars this court (or any other) from granting relief attainable only after a successful appeal or Rule 60(b) motion, including the relief sought in the operative complaint. Importantly, this remains true even assuming the Trustee's newest allegations are sufficient to sidestep the release as a matter of Montana contract law. The release is not only embodied in a privately negotiated stipulation, but also expressly incorporated into and solidified by a federal court order that the Trustee successfully obtained. The secondary manifestation of the release in an order implicates the finality principles discussed earlier. If the Trustee wished to revisit the September 2016 order, the proper vehicle to do so is a direct appeal or a Rule 60(b) motion, not a collateral attack.

The Trustee's primary response is that his claims do not seek to challenge or unwind the sale transaction the order approved under Bankruptcy Code section 363, but instead are limited to revising the release.[19] This response is unavailing for at least two reasons.

*First*, although finality principles certainly apply to sale orders to prevent common collateral attacks on those orders,[20] the doctrine preventing such attacks is not limited to such orders. Instead, the collateral attack doctrine protects almost

---

[18] *Id.* ¶ 35, ECF No. 29-1 at p. 125 of 149.

[19] *See* Trustee's Resp. in Opp'n [etc.] at pp. 33-37, ECF No. 89.

[20] The importance of finality in the section 363 context is further seen in the statutory protection awarded to good-faith transaction counterparties against an adverse ruling on a direct appeal. *See* 11 U.S.C. § 363(m).

every final bankruptcy court order.[21] In a given bankruptcy case the court may enter many orders – such as those granting or denying motions for relief from the automatic stay; allowing or disallowing claims; approving financings, sales, settlements, or payments; confirming plans; and so on – each of which could involve "a discrete procedural unit within the embracive bankruptcy case" that "yields a final, appealable order" which is binding and carries preclusive effect if not timely appealed.[22] Case law demonstrates that the prohibition on improper collateral attacks encompasses all kinds of final orders.[23] Here, the September 2016 order unreservedly and separately resolved and approved both the sale and the stipulated terms, and otherwise granted various relief altering the status quo – all of this means the order is final and was potentially appealable.[24] The Trustee's inability to collaterally attack the release flows from its approval and inclusion in a final, unappealed order, not from anything unique to section 363 sales.

*Second*, even assuming some special finality principle does exist, it applies here since claim releases are asset dispositions under section 363. The statutory basis for a bankruptcy estate representative to release causes of action belonging to the estate is Bankruptcy Code section 363(b), because a release is either a "use" or a de facto "sale" of that estate property.[25] As such, the Ninth Circuit Court of Appeals has expressly held "that a bankruptcy court has the discretion to apply § 363 procedures to a sale of claims pursuant to a settlement approved under Rule 9019" and affirmed application of special finality doctrines (i.e., section 363(m)) to such settlements.[26] Here, the substance of the Trustee's negotiated transaction included a sale of assets – in the form of causes of action – to the potential defendants as part of the consideration for those parties' consent to the broader asset sale and other concessions. Because the legal basis for this relief is grounded

---

[21] There are some limited exceptions to the rule against collateral attacks, *see Travelers Indem. Co.*, 557 U.S. at 153-54 n.6, but the Trustee does not assert that any of those exceptions apply here.

[22] *See, e.g.*, *Ritzen Grp., Inc. v. Jackson Masonry, LLC*, 140 S. Ct. 582, 586-87 (2020).

[23] *See* note 12 *supra*. Consistent with this inclusive theme, courts have barred attempted collateral attacks on bankruptcy court orders approving standalone settlements unrelated to any other asset-sale transaction. *See, e.g.*, *Schumacher v. Ray (In re Schumacher)*, 2010 U.S. Dist. LEXIS 147011, at *13-17 (C.D. Cal. Jan. 15, 2010); *Cadle Co. II v. PC Liquidation Corp. (In re PC Liquidation Corp.)*, 383 B.R. 856, 867 (E.D.N.Y. 2008); *In re Frontier Airlines, Inc.*, 117 B.R. 588, 591-92 (D. Colo. 1990).

[24] *See, e.g.*, *Ritzen Grp.*, 140 S. Ct. at 590-92; *Harrington v. Mayer (In re Mayer)*, 28 F.4th 67, 71-72 (9th Cir. 2022). Indeed, the order itself recites that it "constitutes a final order within the meaning of 28 U.S.C. § 158(a)." Order Authorizing and Approving [etc.] ¶ B, ECF No. 29-1 at p. 93 of 149.

[25] *See, e.g.*, *In re Claar Cellars LLC*, 2020 Bankr. LEXIS 682, at *11 n.24 (Bankr. E.D. Wash. Mar. 13, 2020).

[26] *See Adeli v. Barclay (In re Berkeley Del. Court, LLC)*, 834 F.3d 1036, 1040-41 (9th Cir. 2016).

in Bankruptcy Code section 363(b), any principle specific to that section applies here and supports maintaining the finality of the order's release provisions.[27]

For these reasons, the court concludes that the Trustee is impermissibly and collaterally attacking the September 2016 order, which means he fails to state a claim upon which relief can be granted. Therefore, defendants' motions to dismiss must be granted.

*Leave to Amend*

The Trustee does not request leave to further amend if the court grants defendants' motions. This choice to abstain is reasonable as amendment would be futile.

The release terms in the September 2016 order bar the Trustee's claims. The Trustee's central theories to circumvent this reality are that the release of his claims against defendants was the result of a "mistake" or due to "fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party." Although these theories might be valid bases for a motion under Rule 60(b)(1) or 60(b)(3), such relief is neither sought nor timely under Rule 60(c). Further, such relief cannot be obtained indirectly via other subparts of Rule 60(b) not subject to strict time limitations.[28] Because the Trustee did not seek relief under Rule 60(b)(1), (2), or (3) and articulates no grounds upon which relief might theoretically be available under Rule 60(b)(4), (5), or (6) even assuming such a request would be timely nearly six years later, the prohibition on collateral attacks presents an insurmountable obstacle for the Trustee that renders further amendment futile.

## SUMMATION

For the reasons detailed above, defendants have established that the Trustee's complaint fails to state a claim upon which relief can be granted.

---

[27] Defendants further argue that the release is "integral" to the primary asset sale and thus subject to finality principles implicated by that sale. The Supreme Court recently granted certiorari in response to a petition presenting the question "[w]hether Bankruptcy Code Section 363(m) limits the appellate courts' jurisdiction over any sale order or order deemed 'integral' to a sale order, such that it is not subject to waiver, and even when a remedy could be fashioned that does not affect the validity of the sale." *MOAC Mall Holdings LLC v. Transform Holdco LLC*, Case No. 21-1270 (cert. granted June 27, 2022). Because the Court's eventual opinion could bear on the viability of defendants' "integral" theory and because it is unnecessary to rely on that theory to resolve the pending motions, the court declines to address this issue.

[28] *See, e.g.*, *Kemp*, 142 S. Ct. at 1861.

Further, the legal defect in the Trustee's complaint is fatal. As such, the court will enter a separate order granting defendants' motions to dismiss with prejudice.

DATED: July 15, 2022.

WHITMAN L. HOLT
U.S. BANKRUPTCY JUDGE